UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Comm'r of Soc. Sec. Admin., <br><br> Defendant. | Case No. 19-cv-03595-JSC <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 21, 24 |

Plaintiff seeks social security benefits for a combination of physical and mental impairments including osteoarthritis, meniscus and anterior cruciate ligament tears, femur fracture, depression, post-traumatic stress disorder, and borderline intellectual functioning. In accordance with 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim. Under 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a magistrate judge and submitted requests for summary judgment. (Dkt. Nos. 10, 11.) Because the Administrative Law Judge's decision denying benefits is supported by substantial evidence and free of legal error, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion for summary judgment.

## BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, respectively on July 1, 2015 and July 28, 2015. (Administrative Record ("AR") 15, 57, 69, 187, 194.) In both applications, she alleged a disability onset date of January 1, 2014. (AR 15, 187, 194.) After her applications were denied initially and upon reconsideration, she submitted a written request for a hearing and Administrative Law Judge ("ALJ") Arthur Zeidman held a hearing on September 12, 2017. (AR 15, 28–54.) At the hearing, Plaintiff requested additional time to submit medical records not yet

1  obtained.  (AR 15.)  The ALJ kept the record open for one week post-hearing and the Plaintiff
2  submitted additional medical records within that time.  (*Id.*)  On April 3, 2018, the ALJ issued a
3  decision finding that Plaintiff was not disabled.  (AR 16.)
4        In his decision, the ALJ found that Plaintiff had the severe physical impairments of
5  osteoarthritis of the left knee, and a meniscus tear and anterior cruciate ligament tear of the left
6  knee.  (AR 18.)  Further, the ALJ determined that these severe impairments "significantly limit the
7  ability [of Plaintiff] to perform basic work activities . . . ." (*Id.*)  But, the ALJ found that
8  Plaintiff's additional claimed disabilities of a femur fracture, depression, PTSD, and borderline
9  intellectual functioning, either did not limit her ability to work or only minimally limited her
10 ability to work, and thus were non-severe.  (*Id.*)  The ALJ concluded that these non-severe
11 impairments—considered individually and in combination—did not meet or medically equal one
12 of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (AR 21.)  The ALJ then
13 determined that Plaintiff had the residual functional capacity to perform medium work with certain
14 limitations and concluded she was not disabled because she could perform her past relevant work
15 as a caretaker and home attendant.  (AR 22.)  After the ALJ's decision, Plaintiff filed a request for
16 review.  (AR 1–3.)  The Appeals Council denied review—making the ALJ's decision final—and
17 Plaintiff sought review in this Court.  (Dkt. No. 1.)  In accordance with Civil Local Rule 16-5, the
18 parties filed cross-motions for summary judgment, which are now ready for decision without oral
19 argument.  (Dkt. Nos. 21, 24.)

**ISSUES FOR REVIEW**

1. Did the ALJ err in finding that Plaintiff's mental impairments are non-severe?
2. Did the ALJ err in weighing Plaintiff's medical opinion evidence?
3. Did the ALJ err in rejecting Plaintiff's subjective pain symptom testimony?

**LEGAL STANDARD**

Claimants are considered disabled under the Social Security Act if they meet two requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

2

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that they are unable to do their previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining disability, an ALJ employs a five-step sequential analysis, examining:

> (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work.

*Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). Where evidence is "susceptible to more than one rational interpretation," a reviewing court must uphold the ALJ's findings. *Id.* In other words, "[i]f the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the [ALJ]." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). But, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.*

## DISCUSSION

### A. The ALJ's Finding of Non-Severe Mental Impairments

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non[-]examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an

3

examining physician, and an examining physician's opinion is entitled to more weight than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "[T]he opinion of an examining [physician], even if contradicted by another [physician], can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830–31 (internal quotation marks omitted). And, "[a]n impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted).

Plaintiff challenges the ALJ's finding that Plaintiff's mental impairments are non-severe. Specifically, Plaintiff contends that the ALJ's assigning significant weight to Dr. Dixit's opinion was not based on substantial evidence because Dr. Dixit's report is inaccurate, inconsistent with the rest of the medical record, and makes no mention of Plaintiff's childhood trauma, which she claims is the cause of her PTSD and anxiety disorders.

**1) Dr. Aparna Dixit**

In finding Plaintiff's mental impairments non-severe, (AR 18), the ALJ relied particularly on his analysis of the four broad areas of mental functioning set out in the disability regulations governing evaluating mental disorders, and on the opinion of Dr. Dixit, psychological consultative examiner. The ALJ gave three reasons for assigning Dr. Dixit's opinion significant weight.

First, he found Dr. Dixit's opinion consistent with her mental status observations. (AR 20.) Dr. Dixit rated Plaintiff as either having no impairment or mild impairment on thirteen distinct work-related mental abilities. (AR 430.) Dr. Dixit also assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 61. (AR 429.) The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 32–34 (4th ed. 2000). Here, Plaintiff's GAF score of 61 indicated mild mental impairments. (AR 20.) These GAF results accorded with Dr. Dixit's behavioral observations of Plaintiff, where she noted Plaintiff's euthymic mood, adequate attention and

4

concentration, lack of difficulty in answering simple questions requiring common sense and abstract reasoning, and her ability to work at an even pace with adequate persistence. (AR 428.)

Second, the ALJ found these ratings to be consistent with Highland Hospital treatment records, which showed Plaintiff's symptoms improved with medication. (AR 20.) In a number of separate treatment sessions, both Plaintiff and clinician noted improvements in Plaintiff's mood and PTSD in response to medication and psychotherapy. (AR 343–44, 345–46, 378, 383, 385, 396, 410–11.) Notably, in one psychotherapy session, Plaintiff reported "full compliance" with medication management and denied experiencing any anxiety attacks in the month since her last visit. (AR 343.)

Third, the ALJ found that Plaintiff's self-reported activities of daily living—socializing with family, attending religious activities, grocery shopping, and household chores—all supported Dr. Dixit's assessment. (AR 20, 428.)

Plaintiff contends that Dr. Dixit's opinion should not have been given significant weight because only one set of documents—Form SSA-3368—was reviewed for the evaluation; the opinion made no mention of Plaintiff's childhood trauma, PTSD, or anxiety issues; and the opinion inaccurately listed the number of Plaintiff's children. (AR 427.) The Court disagrees. Plaintiff fails to cite any authority for the proposition that an examining physician must review all a claimant's medical records before the physician's opinion can constitute substantial evidence, especially where, as here, the physician engaged in testing. To the contrary, an examining physician's opinion constitutes substantial evidence when it is based on the physician's independent examination of the plaintiff. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Further, Dr. Dixit's opinion was consistent with Plaintiff's SSA-3368 form. When asked to list all mental conditions that limit her ability to work, Plaintiff self-reported only "emotional issues" as a mental condition on the SSA-3368 form, and nowhere did she indicate that she suffered from PTSD. (AR 224–31.) As to the alleged inaccurate number of Plaintiff's children in Dr. Dixit's opinion, Plaintiff fails to give any reason for why such an error should cast doubt on the overall opinion. It is also not entirely clear that this was an error, as Plaintiff has given birth to four children, one whom was adopted immediately after birth, one who passed away a year after

birth, and two children who are still living.

Accordingly, the Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence for giving significant weight to Dr. Dixit's opinion.

\*\*\*

Plaintiff's opening brief does not challenge the ALJ's findings with respect to his analysis of the Paragraph B criteria and further argument is deemed waived. *See Bray v. Astrue*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009). Given the ALJ did not err in giving weight to Dr. Dixit's opinion, the ALJ's analysis of the Paragraph B criteria to find that Plaintiff did not suffer from a severe mental impairment was supported by substantial evidence and did not involve legal error.

### B. The ALJ's Weighing of the Medical Evidence

Plaintiff also challenges the ALJ's weighing of the medical evidence and contends: (1) the ALJ's assigning significant weight to Drs. Kerns' and Franco's opinions was not based on substantial evidence; (2) the ALJ erred by assigning Ms. Sagewood's opinion little weight yet cherry-picking supportive evidence from her opinion; and (3) the ALJ incorrectly rejected Dr. Catlin's opinion.

#### 1) Drs. Andres Kerns and Anna Franco

The ALJ gave great weight to the opinions of Drs. Kerns and Franco, state agency medical consultants, and premised this finding on the great weight that the doctors gave to Dr. Dixit's opinion. (AR 20.) Plaintiff repeats her bare assertion that the assigning of significant weight to Dr. Dixit's opinion was improper and thus assigning great weight to Drs. Kerns' and Franco's opinions was also improper because those opinions were based on Dr. Dixit's opinion. The Court disagrees. As discussed earlier, Dr. Dixit's opinion constitutes substantial evidence because it was based on her independent examination of Plaintiff. Furthermore, opinions of non-treating or non-examining physicians, such as Drs. Kerns and Franco, may also constitute substantial evidence when "the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, Drs. Kerns and Franco both found that Plaintiff only had mild limitations in her activities of daily living, maintaining social functioning, and maintaining concentration,

persistence or pace.  (AR 20, 62–63, 86–88.)  In making these findings, both doctors gave great weight to Dr. Dixit's opinion, (AR 64, 89), and their assessments are consistent with Dr. Dixit's assessment.  Thus, the ALJ's assignment of great weight to Drs. Kerns' and Franco's opinions was supported by substantial evidence.

### 2) Therapist Anne Sagewood

The ALJ gave little weight to the three opinions offered by Anne Sagewood, Plaintiff's treating therapist.  (AR 20–21, 649–58, 665–66, 676–80.)  Ms. Sagewood, as a therapist and not a physician, is deemed an "other source" under 20 C.F.R. § 416.913(d)(1).  Thus, the ALJ was required to give "specific reasons germane to the witness" for rejecting Ms. Sagewood's opinions.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1111 ("The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so.") (internal citation and quotation marks omitted).  The ALJ did so.

The ALJ gave Ms. Sagewood's July 2013 Mental Capacities Assessment little weight because she had only met with Plaintiff once and acknowledged that she could not yet form an opinion as to Plaintiff's task completion.  (AR 20, 666.)  The ALJ also gave little weight to Ms. Sagewood's opinion that Plaintiff was "unable to be in a work situation" and would take "15 to 18 months before she would be capable of maintaining employment."  (AR 21, 649–58.)  The ALJ did so because these prognostications were not consistent with her description of Plaintiff's activities and abilities.  (AR 21.)  In particular, Ms. Sagewood described Plaintiff as someone whose "parenting skills are excellent" and who "never hesitates to take [her children] to school, appointments, and any errand needed that pertains to them."  (AR 650–51.)  Ms. Sagewood also noted Plaintiff "does well at maintaining a schedule, decision making, and generally runs her household responsibly."  (AR 654.)  Additionally, as discussed earlier, the ALJ found numerous examples of Plaintiff's mental health improvement with medication in the Highland Hospital records and noted the inconsistency between these improvements and Ms. Sagewood's prognosis of Plaintiff's work ability.  (AR 21, 649–58.)

The ALJ gave little weight to Ms. Sagewood's July 2017 Mental Impairment

7

Questionnaire because she did not provide contemporaneous treatment notes supporting the opinion and her opinion was not consistent with her earlier assessments, which were completed contemporaneously with Plaintiff's treatment. (AR 20.) The ALJ then identified the specific prior assessments he found inconsistent with the 2017 opinion. (*Id.*) For example, the 2017 opinion stated Plaintiff:

- Would miss four days or more of work a month;
- Would be off task more than 30% of the time;
- Had marked limitations in:
    - Understanding and learning terms, instructions, and procedures;
    - Initiating or sustaining conversation;
    - Responding to requests, suggestions, criticisms, corrections, and challenges;
    - Completing tasks in a timely manner;
    - Sustaining an ordinary routine and regular attendance at work;
    - Adapting to changes;
    - Setting realistic goals;
    - Making plans independently of others;
- Had moderate or marked limitations in the overall abilities for each Paragraph B functional area. (AR 687–79.)

The ALJ noted that these prognoses were inconsistent with Ms. Sagewood's previous assessments of Plaintiff's social nature and ability to interact appropriately with others, her excellent parenting skills, her consistency and determination for a better life, and her increased ability to meet new challenges rather than avoiding them. (AR 650, 653, 654.) The Court agrees with Plaintiff that faulting Ms. Sagewood's opinion because she did not provide her treatment notes does not make sense. (AR 20.) Nevertheless, the other reasons given by the ALJ are specific and germane to Ms. Sagewood.

Plaintiff's claim that the ALJ improperly cherry-picked statements from Ms. Sagewood's notes is not persuasive. An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts. *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence). But, such selective reliance must be consistent with the medical record as a whole. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable). Plaintiff is quibbling with the ALJ's interpretation of the therapist's findings, but where evidence is susceptible to more than one interpretation, the Court is

8

required to defer to the ALJ's interpretation.  B*urch*, 400 F.3d at 679.

Finally, while an ALJ may not disregard the opinion of a therapist merely because she is not an acceptable medical source, *see Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017), the ALJ did not do so.  Instead, after detailing the specific reasons for rejecting Ms. Sagewood's opinion, the ALJ noted that as an "other source" rather than an acceptable medical source, her opinions are less probative.  This reasoning was not erroneous.  *See Molina*, 674 F.3d at 1111 (noting that "other sources" are entitled to less deference than acceptable medical sources).

Accordingly, the ALJ did not err in giving little weight to Ms. Sagewood's opinions.

### 3) **Dr. Laura Catlin**

Plaintiff also challenges the ALJ's assignment of little weight to the opinion of Dr. Laura Catlin, Plaintiff's examining psychologist, who prepared a psychological and learning disability evaluation report in March 2011.  (AR 659.)  Dr. Catlin assessed Plaintiff with a GAF score of 50, indicating serious mental impairments, and her prognosis was that Plaintiff would be unemployable for 12 months or more.  (AR 20, 661, 663.)  The ALJ gave three reasons for affording little weight to Dr. Catlin's opinion: (1) her opinion that Plaintiff would be unemployable intruded on an issue reserved for the Commissioner; (2) her opinion was inconsistent with the medical evidence from Drs. Dixit, Kerns, and Franco; and (3) her opinion was rendered more than two and a half years prior to Plaintiff's alleged onset date.  (AR 21.)

First, the ALJ erred in rejecting Dr. Catlin's opinion that Plaintiff would be unable to work for 12 months on the grounds that it is an issue reserved for the Commissioner.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (holding that physicians may render an opinion on a claimant's ability to perform work).  The Court nevertheless finds the ALJ's error harmless because, as discussed below, the ALJ provided two other specific and valid reasons for rejecting Dr. Catlin's opinion.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Stout*, 454 F.3d at 1056.

Second, the ALJ's finding that Dr. Catlin's opinion was inconsistent with the opinions of Drs. Dixit, Kerns, and Franco is a specific and valid reason for discounting Dr. Catlin's opinion.  As discussed earlier, Drs. Dixit, Kerns, and Franco all rated Plaintiff as having mild mental

impairments, contradicting Dr. Catlin's rating of Plaintiff as having serious mental impairments.

Third, the ALJ did not err in discounting Dr. Catlin's opinion because "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1165 (9th Cir. 2008). Here, the ALJ supported his rejection of Dr. Catlin's opinion with a specific and legitimate reason: that the assessment was of little relevance because it was long before Plaintiff's alleged onset date. (AR 21.) Accordingly, the ALJ did not err in giving little weight to Dr. Catlin's opinion.

\*\*\*

The ALJ's weighing of all the medical opinion evidence was supported by substantial evidence and did not involve legal error.

**C. The ALJ's Evaluation of Plaintiff's Subjective Pain Testimony**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas*, 278 F.3d at 959.

Here, applying this two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 22.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. Plaintiff made four contentions regarding her symptoms: (1) she alleged knee replacement, arthritis, chronic pain,

10

ligament misalignment, femur fracture, and emotional issues limited her ability to work, (AR 225); (2) she alleged she cannot walk, stand, or sit for a long time, (AR 237); (3) she alleged she had problems with kneeling and stair-climbing but not lifting, and could only walk for one block at a time before needing to rest for thirty minutes to an hour, (AR 242); and (4) she testified at the hearing that she cannot walk without a knee brace, she experiences pain in her knee of five or six on a scale of ten, and she receives physical therapy for her knee, including steroid injections. (AR 38–39.) The ALJ found no evidence of malingering but found that the evidence did not support Plaintiff's alleged loss of functioning because her complaints of disabling left knee pain were not consistent with the record and not consistent with her activities of daily living. (AR 23.) Plaintiff challenges the ALJ's conclusion and contends the ALJ cherry-picked supportive evidence while ignoring contradictory evidence. The Court disagrees.

In assessing Plaintiff's credibility, the ALJ identified several reasons for discrediting Plaintiff's testimony, including: (1) Plaintiff's treatment history and objective medical findings, particularly the Highland Hospital records, in relation to her alleged functional limitations; (2) Plaintiff's poor compliance with scheduled physical therapy appointments; and (3) Plaintiff's activities of daily living. (*See* AR 23–24.) The ALJ cited specific evidence in the record and described why that evidence rendered Plaintiff's subjective reports not credible. (*See id.*) The ALJ's credibility determination satisfies the clear and convincing standard based on his discussion of Plaintiff's alleged pain and functional limitations and the specific, substantial evidence that detracts from the credibility of those subjective reports. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (noting that to satisfy the "clear and convincing" standard, the ALJ must "state which pain testimony is not credible and what evidence suggests the complaints are not credible."); *see also Treichler*, 775 F.3d at 1103 (noting the "ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse [credibility] determination is based.") The Court cannot reweigh the evidence and substitute its conclusion for that of the ALJ. *See Gutierrez*, 740 F.3d at 523. Accordingly, the Court concludes that the ALJ properly evaluated Plaintiff's testimony regarding the pain and functional limitations caused by her conditions.

The ALJ did err with respect to one finding in his analysis of Plaintiff's subjective pain testimony: his finding of *no* documentation of left knee pain symptoms until April 2014. (AR 23.) The July 2003 Highland Hospital treatment records document that Plaintiff fell from a scooter, flipped over the handlebars, and landed on her knee. (AR 499.) At the time, Plaintiff reported her intensity of pain as five out of ten on the pain scale. (AR 500.) Two days later, a Highland Hospital treatment record described her pain as *throbbing* with an intensity of seven out of ten on the pain scale. (AR 502.) The document also notes her femur surgery scheduled for the following day. (AR 501.) The ALJ also overlooked May 2005 Highland Hospital treatment records that note a fall by Plaintiff occurring three weeks earlier, describing "aches, constant, nonradiating" across her right leg and reporting her pain as five out of ten on the pain scale. (AR 504.) The records also show that Plaintiff was still reporting pain as a result of her 2003 femur surgery. (*Id.*) Notably, even within the same records the ALJ uses in support of his incorrect finding, Dr. Michael Krosin, MD, states that "[s]ince [2004, Plaintiff] has had intermittent swelling and pain in the left knee." (AR 23, 668.) Although the ALJ erred with respect to this particular finding, the error is harmless because the ALJ provided other clear and convincing reasons as discussed earlier. *See Treichler*, 775 F.3d at 1099; *Stout*, 454 F.3d at 1056.

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion for summary judgment.

This Order disposes of Docket Nos. 21 and 24.

**IT IS SO ORDERED.**

Dated: October 28, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge